USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/29/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

GARY MOTON,                                     :

                                                :        **REPORT AND**
                                                :        **RECOMMENDATION**
                            Plaintiff,           :
                                                :        15-CV-6485 (GBD) (JLC)
            -v.-                                 :
                                                :
CITY OF NEW YORK, CPT. WILLIAMS,                 :
JOHN DOES 1-2, & JANE DOES 1-2,                  :
                                                :
                                                :
                                                :
                            Defendants.          :
-------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable George B. Daniels, United States District Judge:**

*Pro se* Plaintiff Gary Moton brings this action pursuant to 42 U.S.C. § 1983,

alleging that the City of New York, Captain Williams, and the John and Jane Doe

Defendants violated his constitutional rights during his detention at the Anna M.

Kross Center ("AMKC") on Rikers Island.  Defendants City of New York and

Captain Williams (together "Defendants") move to dismiss Moton's Complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons

set forth below, I recommend that the Court grant Defendants' motion but give

Moton permission to amend his Complaint.

## I. BACKGROUND

### A.    Factual Background

In July 2015, Moton was incarcerated at the AMKC on Rikers Island.  *See*

Complaint ("Compl.") at 2 (Dkt. No. 2).  Moton alleges that on July 1, 2015 he and

1

five other inmates were ordered to scrape the ceiling paint in one of the prison's dormitory units. *Id.* at 2-3. He contends that he was not informed that the paint contained asbestos, nor was he provided with any protective gear such as a mask. *Id.* at 3. Moton claims that investigators visited the site a "few days before" to inspect leaks in the ceiling. *Id.* Another group, wearing protective suits and masks, allegedly fixed the leaks in the ceiling the day Moton was working on it. *Id.*

Moton claims that he has experienced constant coughing, migraine headaches, and chest pain since the July 1, 2015 sanitation detail. *Id.* Prison physicians have allegedly been unable to diagnose Moton's condition, although he believes there "could be long term effects that won't show up now." *Id.*

## B.    Procedural History

Moton initiated this section 1983 action on August 14, 2015 seeking damages for his alleged asbestos exposure. Compl. at 5. On November 24, 2015, Defendants moved to dismiss Moton's Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Moton failed to allege facts to support (1) a conditions of confinement claim under the Eighth Amendment; (2) the personal involvement of the individual defendants; and (3) a claim that his injury arose from an official policy or practice necessary to establish municipal liability. Defendants' Motion to Dismiss ("Def. Mem.") (Dkt. No. 17.)[1] Moton opposed the motion on January 13, 2016. Plaintiff's Opposition to Motion to Dismiss ("Pl. Mem.") (Dkt. No. 21).

---

[1] Defendants contend that although the motion was made on behalf of defendants City of New York and Captain Williams, the arguments made in support of the motion are equally applicable to the John and Jane Doe defendants as well. Def. Mem. at 1 n.1.

Defendants filed a reply on January 27, 2016. Defendant's Reply Memorandum

("Def. Reply") (Dkt. No. 22). This motion is before me following the order of

reference dated September 3, 2015. (Dkt. No. 8).

## II. DISCUSSION

### A.    Standard of Review

On a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded

factual allegations in the complaint as true and draw all reasonable inferences in

favor of the non-moving party. *See, e.g., Nwozuzu v. United States*, No. 14-CV-8589

(LGS), 2015 WL 4865772, at *3 (S.D.N.Y. Aug. 12, 2015). However, a complaint

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible

when "the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged . . .

Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.*

While *pro se* complaints must also contain sufficient factual allegations to

meet the plausibility standard, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013),

district courts should read *pro se* complaints with "special solicitude" and interpret

them to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau*

*of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam) (internal quotation

omitted). Even so, a district court should still dismiss a *pro se* complaint if it "fail[s]

to meet minimum pleading requirements." *Kinsey v. Bloomberg,* No. 12-CV-8936 (PAE) (JCF), 2014 WL 630670, at *3 (S.D.N.Y. Feb. 18, 2014).

## B.      The Basis for Moton's Claims

Moton's Complaint cites no constitutional provisions.  It is well settled that "[s]ection 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotations and citation omitted).  Accordingly, the Court must first identify the constitutional rights, if any, implicated by Moton's allegations. *Id.*[2]

Moton alleges that he was physically harmed by asbestos exposure in a prison dormitory.  Compl. at 3.  These allegations support a deliberate indifference claim. *See LaBounty v. Coughlin*, 137 F.3d 68, 72 (2d Cir. 1998).  Such a claim could arise under the Eighth or Fourteenth Amendment, depending on whether Moton was a pretrial detainee or a convicted inmate at the time of the harm. *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009).  However, whether Moton falls into one or the other category is, for purposes of this analysis, a distinction without a difference. "Claims for deliberate indifference to a serious . . . threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Id.* at 72.

---

[2] The Court notes that while there may be a question as to whether Moton exhausted his administrative remedies in accordance with the PLRA, *see* 42 U.S.C. § 1997e(a), Defendants do not raise the issue in their motion.  Therefore, because PLRA exhaustion is not jurisdictional, it need not be addressed here. *See, e.g., Woodford v. Ngo*, 548 U.S. 81, 101 (2006).

4

Therefore, to state a claim based on his conditions of confinement, Moton must allege that: (1) he suffered an objectively serious harm, and (2) Defendants acted with "a sufficiently culpable state of mind" amounting to a "deliberate indifference" to his health or safety. *Walker*, 717 F.3d at 125 (quotations omitted). The objective element is satisfied where the conditions "pose an unreasonable risk of serious damage to" the inmate's health. *Id.* The risk at issue must be so grave that it offends contemporary standards of decency. *Id.*; *see also Helling v. McKinney*, 509 U.S. 25, 36 (1993). The subjective element is satisfied where the prison official knew of, and disregarded, "an excessive risk to inmate health or safety." *Walker*, 717 F.3d at 125 (internal quotations and citation omitted). Knowledge can be established by evidence that the risk was "obvious or otherwise must have been known to a defendant." *Id.* (internal quotations and citation omitted). Mere negligence alone will not suffice. *Id.*

1.      The Objective Element

It is well known that airborne or "friable" asbestos particles can cause a host of deadly conditions, including cancer that could develop years after exposure. *See, e.g., Envtl. Encapsulating Corp. v. City of N.Y.*, 855 F.2d 48, 50 (2d Cir. 1988). Given these dangers, "exposing an inmate to friable asbestos could violate the Eighth Amendment." *LaBounty*, 137 F.3d at 74. It is less clear what duration or degree of exposure is necessary to establish a constitutional violation. *See id.* at 74 n.5. Defendants argue that a single day's exposure does not satisfy the objective prong of Moton's claim. Def. Mem. at 5.

5

Several courts in this Circuit have determined that a significant level of asbestos exposure is required to state a claim for relief. *See, e.g.*, *Johnakin v. NYC Dep't of Corr.*, No. 11-CV-4807 (SLT) (LB), 2013 WL 5519998, at *17 (E.D.N.Y. Sept. 30, 2013) (acknowledging that "not just any level of exposure to hazardous materials is sufficient to give rise to an Eighth Amendment claim," but granting leave to amend where plaintiff had not specified the degree of asbestos exposure); *Simmons v. Gowanda Corr. Facil.*, No. 13-CV-0647 (RJA), 2013 WL 3340646, at *2 (W.D.N.Y. July 1, 2013) (dismissing complaint with prejudice where inmate "was exposed to asbestos on one date . . . when a construction crew was removing windows in the dorm unit above his"); *Pack v. Artuz*, 348 F. Supp. 2d 63, 79-80 (S.D.N.Y. 2004) ("For exposure to airborne asbestos fibers to create a substantial risk of serious harm, however, the intensity and duration of the exposure must both be significant.").

Moton's allegations do not establish that he was exposed to "unreasonably high levels" of asbestos. *Helling*, 509 U.S. at 35. He alleges only that he scraped the asbestos-filled dormitory ceilings on July 1, 2015 at 9:30 a.m. Compl. at 2-3. We do not know how many hours Moton worked that day, or if he was staffed on the same sanitation detail longer than one day. In any event, it appears that Moton could not have worked on the detail longer than two days because he avers he was transferred to a different facility on July 3, 2015. Compl. at 4. The Complaint therefore does not plausibly establish that Moton suffered an objectively serious harm.

### 2.    The Subjective Element

The Complaint also fails to allege that the individual defendants knew there was asbestos in the ceiling.  Moton claims that Williams was "in charge of [the] 2:00 sanitation" detail and that workers wearing protective gear fixed the ceiling on the day in question.  Compl. at 1, 3.  Although knowledge of a substantial risk may be shown through circumstantial evidence, these allegations do not suggest that Williams was aware of any facts from which she could infer the existence of asbestos.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").  Nor do these allegations show that the asbestos was so obvious that Williams or the other individual defendants must have known about it.  *See id.* at 842.  Moton's Complaint thus does not satisfy the subjective element of his claim.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotations and citation omitted).

## C.    The Requirement of Personal Involvement

To establish a defendant's individual liability pursuant to section 1983, a plaintiff must plead each defendant's personal involvement in the alleged constitutional violations.  *See, e.g., Liner v. Fischer,* No. 11-CV-6711 (PAC) (JLC), 2013 WL 3168660, at *7 (S.D.N.Y. June 24, 2013) (citing *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir. 2006) and *Iqbal,* 556 U.S. at 676), *adopted by* 2013 WL 4405539

(S.D.N.Y. Aug. 7, 2013); *see also Grullon v. City of New Haven,* 720 F.3d 133, 138-39

(2d Cir. 2013).  The personal involvement of a supervisory defendant can be

satisfied by demonstrating that the defendant: (1) participated directly in the

alleged constitutional violation; (2) failed to remedy a wrong after learning of it; (3)

created a policy or custom under which the violation occurred, or allowed such a

policy or custom to continue; (4) was grossly negligent in supervising subordinates

who committed the alleged violation; or (5) was deliberately indifferent to ongoing

unconstitutional acts.  *Id.* at 138-39 (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d

Cir. 1995)); *see Liner,* 2013 WL 3168660, at *7.

The Doe defendants are not mentioned at all in the body of the Complaint.  In

addition, Moton's description of Williams' role lacks any detail aside from the vague

statement that she was "in charge of 2:00 sanitation."  Compl. at 1.  That allegation

is further obscured by Moton's claim that his injury occurred at 9:30 a.m.  *Id.* at 2.

The Complaint does not otherwise state whether Williams was present on the day

in question, assigned Moton to the sanitation detail, or had any other involvement

in the subject incident.  *Cf. Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir. 1987) ("Gill's

complaint is silent as to anything which defendant Jones, the Superintendent of the

Great Meadow Correctional Facility, did or failed to do. . . .  Dismissal of a section

1983 claim is proper where, as here, the plaintiff does no more than allege that

[defendant] was in charge of the prison.") (internal quotations and citation omitted).

Given the deficiencies in the pleading, there is no way to discern the

defendants' respective roles in the alleged constitutional violation.  A complaint that

8

fails to allege the defendants' personal involvement is "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotations and citation omitted); *see also Costello v. City of Burlington*, 632 F.3d 41, 48-49 (2d Cir. 2011) ("The complaint does not allege facts establishing the personal involvement of any of the individual Defendants . . . . This defect is fatal to [plaintiff's] claim under 42 U.S.C. § 1983."). Moton has not plausibly alleged Williams' or the Doe defendants' personal involvement as required to establish their individual liability.

### D.   Municipal Liability

A municipality may be liable under § 1983 if its official custom, policy, or practice causes the plaintiff's constitutional harm. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978); *see also Ciraolo v. City of N.Y.*, 216 F.3d 236, 242 (2d Cir. 2000) ("Municipal liability under § 1983 occurs, if at all, at the level of policy-making, and cannot be premised on a theory of respondeat superior."). This standard can be satisfied in various ways. For example, an official policy may itself be unconstitutional. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004). Alternatively, a municipal policymaker may have approved, ordered, or exhibited "deliberate indifference" to subordinate employees' unconstitutional actions. *Id.* at 126-27.

In all cases a plaintiff must present some evidence to establish, either directly or circumstantially, the existence of a municipal custom, policy, or practice.

9

"[I]n the absence of other evidence, mere proof of a single incident of errant behavior [by a subordinate employee] is an insufficient basis for finding that a municipal policy caused plaintiff's injury." *Sarus v. Rotundo*, 831 F.2d 397, 402-03 (2d Cir. 1987). On the other hand, "because a single action on a policymaker's part is sufficient to create a municipal policy, a single instance of deliberate indifference to subordinates' actions can provide a basis for municipal liability." *Amnesty Am.*, 361 F.3d at 127. Thus, while the necessary factual components vary, "[t]o allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Missel v. Cty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of N.Y.*, 524 F.3d 346, 350 (2d Cir. 2008)).

The Complaint does not support a *Monell* claim against the City of New York. *Monell* liability must be based on an underlying constitutional violation which Moton has failed to allege, as discussed above. *See, e.g., Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."). Even if he had, there are no allegations that the harm was brought about by any municipal policy. Moton simply alleges that he was exposed to asbestos and suffered injuries. Proof of the harm is not proof of the policy, at least not in this case. *See Sarus*, 831 F.2d at 402

10

("In sum, the only relevant evidence presented by appellees was the manner in which they themselves were arrested."). The Complaint therefore fails to state a *Monell* claim.

### E.    Leave to Amend[3]

Moton's Complaint fails for the reasons set forth above and accordingly warrants dismissal. Defendants ask that the dismissal be "with prejudice." Def. Reply at 6. Implicit in this request is that any amendment would be futile. *See Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011).

In this Circuit, "a *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotations and alterations omitted). Indeed, the Federal Rules of Civil Procedure mandate that leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

It is unclear if the Complaint fails due to a lack of proof, or rather to Moton's unfamiliarity with the federal pleading standards. This ambiguity should, at this stage of the proceedings, be construed in Moton's favor, particularly given that at least some of the Complaint's failings may be easily remedied. For example, several

---

[3] Moton did not request leave to amend in the event the Court dismissed his Complaint, but that has no impact on the analysis below. *See, e.g., Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004) ("[T]he Court may *sua sponte* grant leave to amend."); *see also* 6 CHARLES A. WRIGHT & ARTHUR R. MILLER, Fed. Prac. & Proc. Civ. § 1473 (3d ed. 2016) (noting that "the court, on its own initiative, may require the parties to amend to avoid dismissal").

11

of the missing details mentioned in this Report are likely within Moton's personal knowledge, such as who placed him on the sanitation detail, the exact length of the detail, whether other inmates were staffed on similar asbestos remediation projects without protective equipment, to name just a few.

Moton's opposition brief further supports this assessment, as it contains additional facts. Moton claims that Williams "was the officer overseeing the cleanup, and work of the sanitation crew at the time. Captain Williams was at the time herself wearing protective equipment and was well aware of the apparent haza[r]d." Pl. Mem. at 4-5. Moton further contends that his asbestos exposure was not limited to the sanitation detail. He states that his housing unit contained asbestos at an unspecified time "for 90 days or more while the same decontamination process was ongoing." *Id.* at 4. "The staff," Moton writes, "did not follow the proper procedures of the facility, or there were no proper procedures for the facility in the first place, which . . . proves that the facility staff was not trained properly." *Id.* at 5. He also received an inhaler and antibiotics from the prison pulmonologist, but does not elaborate on the physician's findings. *Id.*

It is generally error for a court to consider factual allegations contained in a legal brief when ruling on a Rule 12(b)(6) motion. *See, e.g., Friedl v. City of N.Y.*, 210 F.3d 79, 83-84 (2d Cir. 2000). However, a more relaxed approach is appropriate in the case of a *pro se* plaintiff. *See, e.g., Mayes v. N.Y.C. Police Dep't*, No. 10-CV-1690 (JSR) (JLC), 2011 WL 2206739, at *3 (S.D.N.Y. June 6, 2011) ("While a *pro se* plaintiff must still ensure that his complaint meets the plausibility standard in

12

*Iqbal* and *Twombly*, the Court may consider the facts set forth in [plaintiff's]

opposition to the present motion as support for his claims without converting a

motion to dismiss into a motion for summary judgment."), *adopted by*, 2011 WL

3743309 (S.D.N.Y. Aug. 23, 2011); *Collins v. Goord*, 438 F. Supp. 2d 399, 403 n.1

(S.D.N.Y. 2006) ("Because Collins, as a pro se plaintiff, is subject to a more liberal

pleading standard, I will consider factual allegations contained in his opposition

papers to supplement the allegations in his original and amended complaints.")

(collecting cases).  Although the additional allegations that Moton sets forth in his

opposition papers will not save his Complaint as it currently stands, they suggest

that a more carefully drafted and detailed complaint could potentially survive a

Rule 12(b)(6) motion.[4]

Finally, none of the factors that might support denial of the amendment—

including delay, bad faith, repeated failure to cure pleading defects, or undue

prejudice—is present here.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008).

---

[4] It is worth noting, however, that Moton's failure to train allegations, included for the first time in his opposition papers, are likely insufficient to resurrect his *Monell* claim. *See* Pl. Mem. at 5. "[A] city's failure to train its subordinates satisfies the policy or custom requirement only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).  Moton correctly asserts that the failure to train may be the basis for municipal liability, but merely theorizes, without any factual support whatsoever, that such a failure caused his harm.

Of course "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." *Amnesty Am.*, 361 F.3d at 130 n.10.  But that does not excuse a plaintiff from pleading a plausible claim. *Simms v. City of N.Y.*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012); *see also Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015) ("[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details.").  Nevertheless, the Court cannot conclude on the present record that Moton would be unable to plead a facially plausible *Monell* claim against the City, however slim that prospect may be.

Moton has not amended his Complaint since initiating this action. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[I]t is rare that such leave [to amend] should be denied, especially when there has been no prior amendment."). If amendment is allowed, Defendants will suffer no prejudice (let alone "undue" prejudice), even though Moton raises new facts that go beyond the allegations contained in his Complaint. "This is not a case where the amendment came on the eve of trial and would result in new problems of proof." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). To the contrary, there is not even a scheduling order in place yet. Leave to amend therefore should be granted.

## III. CONCLUSION

For the foregoing reasons, I recommend that the Court grant Defendants' motion, but permit Moton to amend the Complaint.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE**

14

**APPELLATE REVIEW.**  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  *See Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis,*

*Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: April 29, 2016
       New York, New York

                                              JAMES L. COTT
                                              United States Magistrate Judge


**A copy of this Report and Recommendation
has been mailed to:**

Gary Moton
15-R-1693
Adirondack Correctional Facility
P.O. Box 110
Ray Brook, NY 12977-0110